UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ROBERT FEAGLEY, PETER PERRY,
TIMOTHY CRISS, CHRISTOPHER J.
HELD, CHALKER ANDERSON and
JOSEPH WEISS, individually and on
behalf of others similarly situated,**

      **Plaintiffs,**

      **v.**                             **Case No. 8:11-CV-564-EAK-MAP**

**TAMPA BAY DOWNS, INC.,**

      **Defendant.**

_____ /

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on Defendant Tampa Bay Downs, Inc.'s Motion for

Summary Judgment (Dkt. 16), Defendant Tampa Bay Downs' Objections to the Affidavit

Submitted in Opposition to Defendant's Motion for Summary Judgment (Dkt. 26), and the

respective responses thereto (Dkt. 22, 31).  For the reasons set forth below, Defendant's Motion

for Summary Judgment is **DENIED**, Defendant's Objections to Plaintiffs' Affidavit are

**OVERRULED**, and Defendant's Alternative Motion to Strike Plaintiffs' Affidavit is also

**DENIED**.  The following facts, gleaned from the record as a whole, are provided solely for

background purposes.

## BACKGROUND

Plaintiff, Robert Feagley (hereinafter referred to as "Feagley" or "Plaintiff"), a poker

dealer employed by Tampa Bay Downs, Inc. (hereinafter "Tampa Bay Downs" or "Defendant"),

brings the instant claim against his employer on behalf of himself and others similarly situated for Tampa Bay Downs' alleged failure to pay its poker dealers a minimum wage, as required by the Florida Minimum Wage Act, Fla. Stat. § 448.110 (2012). (Dkt. 2, ¶¶ 7–11, 26). The instant dispute surrounds Tampa Bay Downs' claiming of a tip credit on its poker dealers, which permitted it to pay them less than the statutorily required minimum wage. (Dkt. 2, ¶¶ 9–11). Feagley contends that, by requiring its poker dealers to share their tip pool with non-tipped employees such as card room supervisors, Tampa Bay Downs was stripped of its ability to claim the tip credit and was therefore obligated to pay its dealers the full minimum wage. (Dkt. 2, ¶ 11–15). In his one-count collective action (i.e., class action) complaint, Feagley accordingly seeks unpaid minimum wages owed to him for the period in which he was only paid pursuant to the tip credit, in addition to liquidated damages, attorneys' fees and costs.

Tampa Bay Downs is a licensed pari-mutuel establishment operating pursuant to Chapter 550 of the Florida Statutes. (Dkt. 16-2, ¶ 3). In that capacity, it provides live horseracing during certain months of the year (the "high season") and simulcasts horse races year-round from other venues upon which its patrons can wager. (Dkt. 16-2, ¶ 5). Tampa Bay Downs also holds a card room license pursuant to Florida Statute section 849.086 and runs the Silks Poker Room on the third floor of its race track premises pursuant to that license. (Dkt. 23, ¶¶ 2, 12). The poker room is surrounded by belt stanchions and is under constant surveillance as required by Florida law. (Dkt. 19, at 37:1–7; Dkt. 18, at 28:5–10). In addition to the poker room, the third floor also contains a restaurant/bar in the non-stanchioned area, as well as a pari-mutuel betting window and a bank of windows and grandstands that overlook the racetrack and provide a viewing area for racing spectators. (Dkt. 16-2; Dkt. 22-1). Tampa Bay Downs is only permitted to have a

2

card room license and operate its poker room because it also operates a pari-mutuel at the same site. (Dkt. 18, at 31:8–11).

In its motion for summary judgment, Tampa Bay Downs argues that it is absolutely exempt from the provisions of the Florida Minimum Wage Act because it satisfies the so-called amusement and recreational establishment exemption of the federal Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219 (2006), which in turn removes it from the shroud of coverage of the Florida Minimum Wage Act. Feagley, for his part, argues that Tampa Bay Downs and the Silks Poker Room are actually *two separate establishments* for purposes of FLSA exemptions, and that the exemption is therefore inapplicable to him and his cohorts.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 249 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). That burden can be discharged if the moving party can show the Court that there is "an absence of evidence to support the nonmoving party's case." *Id.* at 323, 325. When the moving party has met this initial burden, the nonmoving party must then designate specific facts showing that there exists some genuine issue of material fact in order to defeat summary judgment. *Id.* at 324.

Issues of fact are "genuine" only if a reasonable jury, considering the evidence presented, could find for the nonmoving party. *Anderson*, 477 U.S. at 249. Material facts are those that will

affect the outcome of the trial under governing law. *Id.* at 248; *Hickson Corp. v. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). In determining whether a material issue of fact exists, the court must consider all evidence in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir. 1983). If the determination of the case hinges on which competing version of the facts or events is true, the case should be submitted to the trier of fact and the motion for summary judgment denied. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir. 1987). Put another way, the weighing of evidence and the consideration of the credibility thereof are issues of fact to be determined by the jury at trial. *See Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1299 (11th Cir. 1983).

## DISCUSSION

Before reaching the merits of Defendant's motion for summary judgment, a bit of housekeeping beckons. Defendant has filed a motion "objecting to" (and moving in the alternative to strike) the affidavit of Plaintiff Feagley, which was submitted by Plaintiff in support of his response to Defendant's summary judgment motion. Because the evidence to be considered in appraising Defendant's motion for summary judgment hinges on the outcome of Defendant's objections to the Feagley Affidavit, the Court begins there.

### 1. Defendant's Motion to Strike the Feagley Affidavit

Defendant styles its motion as "Objections to the Affidavit Submitted in Opposition to Defendant's Motion for Summary Judgment" (Dkt. 26), and specifically opposes paragraphs 10, 11, 12, 13, 16, and 17 of Feagley's affidavit. (Dkt. 23). In particular, Defendant argues that these paragraphs fail to meet Federal Rule of Civil Procedure 56(c)(4)'s command that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge . . . and show that the affiant or declarant is entitled to testify on the matters stated." And though

4

Defendant styles its submission as "objections," the proper mechanism for opposing a party's affidavit for failure to comply with Rule 56(c)'s personal knowledge requirement is a Rule 12(f) motion to strike; this Court will accordingly treat Defendant's motion as such. *E.g., Johnson v. Scotty's, Inc.*, 119 F. Supp. 2d 1276, 1281 (M.D. Fla. 2000).

Determining the proper nature of the task at hand quickly renders resolution of the instant question easy, if not banausic, for it is plain the challenged paragraphs of the affidavit need not be stricken. "It is well settled within the Eleventh Circuit that motions to strike are generally disfavored." *Petit v. S. FL Express Bankserv, Inc.*, No. 608-CV-721-ORL-31GJK, 2009 WL 1862300, at *1 (M.D. Fla. June 25, 2009). Thus, "[a] motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Hughes v. Amerada Hess Corp.*, 187 F.R.D. 682, 685 (M.D. Fla. 1999) (internal quotation marks omitted).

Strewn in among various animadversions attacking the substance (i.e., the lack of veracity) of Feagley's affidavit is the true ground for Defendant's motion to strike—namely, that Feagley, as a poker dealer, did not have personal knowledge as to the goings-on of either the Sands Poker Room or Tampa Bay Downs sufficient to render his statements admissible. (Dkt. 26). But "[a]ccording to the Federal Rules of Evidence, personal knowledge can be established by showing the witness was in a physical position to see, hear, or *otherwise perceive* the matters to which the testimony relates." *Johnson*, 119 F. Supp. 2d at 1281 (emphasis supplied). And "[c]ommon sense dictates that if an affiant is an employee of a company, she has personal knowledge of events and circumstances that occurred at the company within her sphere of observation." *Williams v. Asplundh Tree Expert Co.*, No. 3:05-CV-479-J-33MCR, 2006 WL 1793551, at *3 (M.D. Fla. June 28, 2006).

5

In the Court's view, there is sufficient factual support for a jury to find that Feagley has personal knowledge through direct or other perception of those things to which he attested in his affidavit. *See* 27 Wright & Miller, Federal Practice & Procedure § 6027 (noting that commentators and codifiers have been uniform in "always emphasizing the minimal nature of the showing of personal knowledge required to go to the jury" in dealing with motions to strike affidavits for lack of personal knowledge); *see also* Fed. R. Evid. 104(b) (requiring only proof "sufficient to support a finding that the fact does exist"). And insofar as certain portions of the Feagley affidavit are more helpful than others in laying out the facts at issue in this case, the Court is amply suited to winnow Plaintiff's papers on the instant motion for summary judgment, and the jury is equally competent to thresh Feagley's testimony once at trial.

The Court finally notes that, notwithstanding the foregoing analysis, Defendant's motion to strike is untimely and would be subject to denial in any event. Rule 12(f) "plainly and clearly states that a motion to strike may be filed upon motion by a party within *20 days* after service of the pleading upon the party." *Baldwin v. Nw. Mut. Life Ins. Co.*, 92-1239-CIV-T-17B, 1994 WL 150831, at *2 (M.D. Fla. Apr. 14, 1994) (emphasis in original). Feagley's affidavit was served on February 9, 2012. (Dkt. 23, at 1). Defendant's motion was filed April 30, 2012. (Dkt. 26, at 7). The motion was thus out of time. Defendant's Objections to Plaintiffs' Affidavit are overruled and Defendant's Alternative Motion to Strike is denied.

## 2. Defendant's Motion for Summary Judgment

Tampa Bay Downs contends that it is exempt from Florida Minimum Wage Act under the seasonal recreation and amusement exemption to the federal Fair Labor Standards Act. Pursuant to section 448.110 of Florida Minimum Wage Act, Florida's Act is subject to "[t]he provisions of [§§] 213 and 214 of the federal Fair Labor Standards Act, as interpreted by

applicable federal regulations and implemented by the Secretary of Labor." Section 213 of the

FLSA lists various exemptions to the Act; among them is the seasonal recreation and amusement

exemption, which excepts from the Act's provisions

> any employee employed by an establishment which is an amusement or
> recreational establishment . . . if . . . during the preceding calendar year, its
> average receipts for any six months of such year were not more than 33 1/3 per
> centum of its average receipts for the other six months of such year.

29 U.S.C. § 213(a)(3)(B) (2006). The crux of the instant case is whether Tampa Bay Downs

qualifies for this statutory exemption.

"Exemptions under the FLSA are to be construed narrowly against the employer who

asserts them." *Jeffery v. Sarasota White Sox*, 64 F.3d 590, 594 (11th Cir. 1995). In addition,

"[t]he employer has the burden of showing that it is entitled to the exemption." *Id.* Here,

Feagley "does not dispute that Tampa Bay Downs is a recreational or amusement facility." (Dkt.

22, at 4). Rather, he argues that the Silks Poker Room is a separate establishment from Tampa

Bay Downs and must be treated as such in calculating whether it meets the 33 1/3% receipts test

of the amusement exemption. Feagley concedes that "if Silks Poker Room is not a separate

establishment, then Tampa Bay Downs meets the 33 1/3[%] receipts test." (Dkt. 22, at 4 n.1).

Thus, with regard to the present motion, "[t]he answer depends on what constitutes the

'establishment' under [the § 213(a)(3)(B) exception], which 'is a problem of law to be decided

from all the facts in [the] case." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d

1150, 1156 (11th Cir. 2008) (quoting *Acme Car & Truck Rentals, Inc. v. Hooper*, 331 F.2d 442,

44 (5th Cir. 1964)).[1]

Turning to whether Tampa Bay Downs and the Silks Poker Room constitute the same or

different "establishments" for the purposes of the FLSA, the Court begins by noting that "[t]he

---

[1] Pursuant to *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), all decisions of the former Fifth
Circuit announced prior to October 1, 1981, are binding precedent in this Circuit.

FLSA does not define 'establishment.'" *West v. City of Ft. Pierce*, No. 07-14335-CIV, 2008 WL 3270849, at *3 (M.D. Fla. Aug. 8, 2008). That said, "regulations promulgated by the Secretary of Labor have defined this term [to] 'refer[] to a distinct physical place of business.'" *Id.* (quoting 29 C.F.R. § 779.23).[2] The regulations also lay out a three-part test for determining whether, in a given situation, there are "[s]eparate establishments on the same premises":

> [T]wo or more physically separated portions of a business though located on the same premises, and even under the same roof in some circumstances may constitute more than one establishment for purposes of exemptions. In order to effect such a result physical separation is a prerequisite. In addition, the physically separated portions of the business also must be engaged in operations which are functionally separated from each other . . . . In other words, the retail portion of an establishment would be considered a separate establishment from the unrelated portion if (a) it is physically separated from the other activities; and (b) it is functionally operated as a separate unit having separate records, and separate bookkeeping; and (c) there is no interchange of employees between the units. The requirement that there be no interchange of employees between the units does not mean that an employee of one unit may not occasionally, when circumstances require it, render some help in the other units or that one employee of one unit may not be transferred to work in the other unit. The requirement has reference to the indiscriminate use of the employee in both units without regard to the segregated functions of such units.

29 C.F.R. § 779.305; *see Alvarez Perez*, 515 F.3d at 1158 (explaining that all three requirements must be met in order for two establishments on the same premises to be considered separate for purposes of the amusement exemption); *see Chao v. Double JJ Resort Ranch*, 375 F.3d 393, 399 (6th Cir. 2004) (noting that if a portion of a business slakes all three elements above, it qualifies as a separate establishment under the amusement exemption); *Marshall v. N.H. Jockey Club, Inc.* 562 F.2d 1323, 1330 (1st Cir. 1977) (same); *see also Marshall v. Sundial Assocs., Ltd.*, 588 F.2d 120, 123 n.2 (5th Cir. 1979) (remarking that § 779.305 is "in a group of regulations that are explicitly to be applied to a number of exemptions").

---

[2] The Secretary's final regulations, promulgated through notice and comment, are entitled to *Chevron* deference and will be given presumptive weight as long as they are based on a "permissible reading of the statute." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984).

Thus, in order to win summary judgment, Tampa Bay Downs must show that there is no genuine issue of material fact as to: (1) whether Tampa Bay Downs is physically separated from the Silks Poker Room; (2) whether there is functional separation between the two units; and (3) whether there is interchange of employees between the poker room and the operation at large. *See Jeffery*, 64 F.3d at 593–95. Whatever a jury may ultimately decide as to the applicability of the seasonal amusement exemption given the facts of this case, it is plain that material issues of fact preclude this Court's granting summary judgment at this juncture. For starters, the parties vehemently disagree and offer vastly differing accounts as to just how segregated the poker room is from the rest of the third floor, both as a matter of form and of function. *See* Dkt. 19, at 44:7– 15. *Compare* Dkt. 18, at 37:11–40:6 (explaining that when not being used for poker, tables in the Silks Poker Room are available for other patrons and that 20 or 30 kids could come sit at an empty table), *with* Dkt. 23, ¶¶ 13 (stating that minors are prohibited from the poker room but permitted in the pari-mutuel betting lines). Further, the parties are at odds as to whether Silks Poker Room dealers are subject to the same managerial control as are other employees of Tampa Bay Downs, and resolution of the functional separation question in part hinges on that subtle distinction. *Compare* Dkt. 16-2, at ¶ 10 (contending that all Tampa Bay Downs employees are subject to the same policies); *with* Dkt. 23, ¶¶ 7, 17, 19, 20, 24; *and* Dkt. 23, Exs. A, B, C (submitting that poker dealers are subject to entirely separate rules and regulations and treated as employees of an entity separate from Tampa Bay Downs).

Another relevant factor in determining whether two business segments are functionally separated for purposes of the amusement exemption is whether they were treated as distinct and autonomous economic units within the business. *See Marshall*, 562 F.2d at 1331 (noting that differences in business risks and patterns of state regulation can augur in favor of a finding of

functional separation); *see also Alvarez Perez*, 515 F.23d at 1159–60. Clearly, the operation of a poker room carries with it markedly different business risks than the operation of a horseracing track, and the parties do not dispute that different Florida state regulations apply to the poker room than to the pari-mutuel side of the business. None of that, of course, says anything about bookkeeping or the fact that—whether required by Florida law or not—the Silks Poker Room initially segregates receipts from its poker operations from those of its horseracing operation. Dkt. 19, at 24:11–25:22; 54:4–55:10; *see Alvarez Perez*, 515 F.23d at 1159. The fact that Florida law requires the initial sequestration of such funds may be a factor, but it in no way conclusively vitiates the fact that the funds are, at bottom, held separate (at least for a short while). With regard to the third element of the test, Tampa Bay Downs does not seem to dispute the fact that its poker dealers are not fungible within the overall business and are therefore not subject to regular "interchange." (Dkt. 23, at ¶ 21); *see Alvarez Perez*, 515 F.23d at 1159. And this enumeration of unresolved factual issues is in no way exhaustive—indeed, in light of the fact-intensive nature of the three-part inquiry, the Court is quite sure that it has here listed but a few of many. At any rate, given that the burden at trial is Tampa Bay Downs', this Court need not dwell long on the question because, even just considering the cursory analysis above, it follows naturally that Tampa Bay Downs' motion must fail. Defendant's motion for summary judgment is denied.

The Court notes in closing that Tampa Bay Downs' argument that the Court should defer to the Department of Labor's past determinations regarding Tampa Bay Downs' eligibility for the amusement exemption falls wide of the mark. The measure of deference properly granted to opinion letters such as those issued by the Department of Labor in this case "has been understood to vary with circumstances, and courts have looked to the degree of the agency's care, its

consistency, formality, and relative expertness, and to the persuasiveness of the agency's

position." *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001). This approach has produced

a great "spectrum of judicial responses, from great respect at one end to near indifference at the

other." *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001). "Justice Jackson summed things

up in *Skidmore v. Swift & Co.*:

> The weight [accorded to an administrative] judgment in a particular case will
> depend upon the thoroughness evident in its consideration, the validity of its
> reasoning, its consistency with earlier and later pronouncements, and all those
> factors which give it power to persuade, if lacking power to control."

*Id.* (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (alteration in original)). Having

laid out the proper standard, the asthenic nature of Defendant's position comes quickly into

focus. That an agency has previously discussed—however remotely—the particular question at

issue does not talismanically transmute that prior determination into a font of legal authority on

the issue at hand. That is especially so if the previous agency determination bears no indicia of

deliberate reasoning and clarity of analysis.

Here, the Department of Labor letters nowhere suggest that the agency *even once*

*considered* the question of whether the Silks Poker Room is a separate establishment from the

rest of Tampa Bay Downs. (Dkt. 17, Exs. B, C, D). In fact, it seems plain from even a

perfunctory review of these materials that the Department of Labor was merely applying the 33

1/3% receipts test to the financial records submitted by Defendant for the year in question.

Given that the Department of Labor cannot be said to have even addressed the separate

establishment question at issue in the case at bar, Defendant's suggestion that these informal

letters enjoy the "power to persuade, if lacking power to control" with regard to the precise

question presented here must be met with hearty disbelief. *See Skidmore*, 323 U.S. at 140.

Insofar as Tampa Bay Downs suggests otherwise, it is wrong. As explained above, genuine

11

issues of material fact preclude summary judgment, and the Department of Labor letters change

nothing.  Sifting through these lingering questions of fact is for the jury, not this Court.

Accordingly, it, it is

　　　　**ORDERED** that Defendant's Motion for Summary Judgment be **DENIED**, Defendant's

Objections to Plaintiffs' Affidavit be **OVERRULED**, and Defendant's Alternative Motion to

Strike Plaintiffs' Affidavit also be **DENIED**.  The case shall be set for trial as soon as

practicable.

　　　　**DONE AND ORDERED** in Chambers, in Tampa, Florida this ⟋ʒⁱᵗʰ of June, 2012.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record.